## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FBR CAPITAL MARKETS & CO,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Civil No. 13-00535 (RCL)** |
| ) | |
| **PETER D. HANS,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

Now before the Court is the Petitioner FBR Capital Markets & Co.'s Petition to Partially Vacate Arbitration Award [2]. Upon consideration of Petitioner's Memorandum in Support of its Petition to Partially Vacate Arbitration Award [4], Respondent Peter Hans' Memorandum in Opposition To Petitioner's Petition to Partially Vacate Arbitration Award [7], Respondent's Motion to Confirm the Arbitration Award [8], Petitioner's Reply [9], Respondent's Reply [10], and Petitioner's Notice of Supplemental Authority [11], the Court will DENY Petitioner's Petition To Partially Vacate Arbitration Award [2] and GRANT Respondent's Motion to Confirm the Arbitration Award.

## I.     BACKGROUND

During the times relevant to this matter, Peter Hans (hereinafter "Hans" or "Respondent") was employed by FBR Capital Markets & Co. (hereinafter "FBR" or "Petitioner") as a Sales Broker and worked on a commission-only basis. As a broker, Hans' responsibilities included seeking potential investors for FBR's clients, and that entailed developing and maintaining

strong relationships with prospective investors. When an FBR client decided that it needed to raise capital or disperse stock, Mr. Hans would attempt to convince his developed contacts in the financial industry to invest in FBR's clients. FBR was remunerated for its services in various ways, including cash payments and stock payments. It was FBR's practice to compensate its Sales Brokers at a rate of 14.5% of the value of primary and secondary transactions. Pet.'s Memorandum in Supp. Petition to Partially Vacate Arbitration Award (hereinafter "Pet.'s Mem.") 3, ECF No. 4.

The transaction at the center of the current dispute involved a significant equity sale of FBR's client, XL Health, to the private equity firm, MatlinPatterson Global Advisors LLC that was facilitated by Hans and his partner Doyle. For procuring the investment for XL Health, it paid FBR a cash fee of $6.8 million in March 2008. Three months later, XL Health made a sizeable stock payment to FBR, valued at $5 million. FBR sold the XL Health stock for $5.5 million in March 2011. Pet.'s Mem 3.

After the FBR received payments from XL Health, it determined that, due to the unique nature of the transaction, its Sales Brokers would not be compensated at the normal 14.5% rate. Altering its customary formula, it paid Hans and his partner a 10.875% commission on the "selling concession" of the cash fee ($6.8 million).[1] Pet.'s Mem. 4. By paying out the commission in this manner, Hans and his partner each received more than $100,000 less from the cash fee than they were anticipating based on the 14.5% policy.

---

[1] Under FBR's policy or standard practice, of the fee paid to FBR by its client for such a service, 60% of the fee, without any deductions for transaction costs or other expenses, was allocated directly to the sales team. From that 60%, the 14.5% commission would be paid to the Sales Broker(s) responsible for the sale. If this policy had been followed in the case of the XL Health sale, Hans and his partner would have received a total of $591,600 or $295,800 each. Resp.'s Mem. In Opp. 8-9, ECF No. 7. FBR deviated from this course in two ways: first, it deducted over $1 million from the $6.8 million cash fee before allocating the 60% share to the sales team; second, FBR paid Hans and his partner a commission rate of 10.875% rather than 14.5%. Therefore, from the cash fee, Hans and Doyle received a total of $370,198.56 or $185,099.28 each. Pet.'s Mem. 4.

Soon after FBR received XL Health's stock fee in June 2008, Hans and his partner inquired as to the details of their commission as it related to the stock fee. Apparently, Hans and his partner were assured that they would receive their commission on that portion of the fee when the stock was liquidated.[2] Resp.'s Mem. In Opp. (hereinafter "Resp.'s Mem.") 8, ECF No.7. That liquidation occurred in March 2011, at which point neither Hans nor his partner were still employees of FBR. After they learned of FBR's $5.5 million gain from the sale of the XL Health stock, Hans and his partner requested that FBR pay them the commission they were owed on the stock sale. FBR refused. *Id.*

To receive the payments they believed they were due, Hans and his partner initially filed suit in the Eastern District of Virginia. They voluntarily dismissed that suit when FBR objected to litigation, arguing that the dispute should be arbitrated before the Financial Industry Regulatory Authority ("FINRA"). After hearing extensive evidence over two days, the FINRA arbitration panel awarded Hans $267,960, which was his share of a 14.5% commission on the stock fee FBR received when it liquidated the XL Health stock, plus interest. FBR filed a petition in this court to partially vacate that arbitration award. They argue that the panel manifestly disregarded the law by awarding Hans the commission and accrued interest for the stock fee.

## II.     LEGAL STANDARD

### A.  Judicially Vacating an Arbitration Award

The Federal Arbitration Act, 9 U.S.C. §§ 10-11 (2013) provides the exclusive grounds by which a court may vacate an arbitration award granted pursuant to the Act. *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S.576, 586-88 (2008). Understanding the statutorily

---

[2] This point is factually disputed by FBR, Resp.'s Mem. 9, but this disagreement was put to the arbitration panel, who, given its award decision, clearly found for the Respondent. This court defers to that finding, as discussed more fully below.

provided grounds for arbitral award vacatur to be "exclusive" follows logically from Congress' clearly expressed and intended "national policy favoring arbitration" as a dispute resolution venue. *Id.* at 588. Judicial review of the evidentiary and legal findings of an arbitration panel is sharply limited by §§ 10 and 11 to "egregious departures from the parties' agreed-upon arbitration: corruption, fraud, evident partiality, misconduct, misbehavior, exceeding powers, evident material miscalculation, evident material mistake, awards upon a matter not submitted; the only ground with any softer focus is imperfections, and a court may correct those only if they go to a matter of form not affecting the merits." *Id.* at 586 (internal quotations omitted). Furthermore, the burden facing petitioners who seek judicial vactur of arbitration awards is exceedingly high. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). " To obtain that relief," petitioners for judicial vacatur "must clear a high hurdle. It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Id.*

### B. Manifest Disregard

FBR seeks judicial vactur of the arbitration award on the theory that the FINRA panel manifestly disregarded the laws of Virginia. Pet.'s Mem. 7. Notably, this theory of attack on an arbitral award falls clearly beyond any of the explicit, challengeable grounds within §§10 and 11 of the FAA. *In Hall Street*, the Supreme Court declared the statutory grounds for vacatur exclusive, thus rendering the "manifest disregard" challenge's forth-going vitality a dubious proposition. *Hall Street*, 552 U.S. at 586. Subsequent cases have not resolved the question of its continued existence. In *Stolt-Nielsen*, the Supreme Court acknowledged that manifest disregard may not have survived its *Hall Street* decision, resolving the issue on one of the FAA's statutory grounds. *Stolt-Nielsen*, 559 U.S. n. 3. In *Affinity Fin. Corp. v. AARP Financial, Inc.*, the D.C. Circuit "assumed without deciding" that "manifest disregard" still existed post-*Hall Street*, but

4

found that the party requesting vacatur had not even argued the point. 468 Fed.Appx. 4, 5 (D.C. Cir. 2012). Because the case law controlling this Court's reasoning has refused to revive "manifest disregard" since its apparent death knell in *Hall Street*, this Court evaluates FBR's contention with considerable suspicion.

At any rate, FBR can only establish manifest disregard if it demonstrates that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Affinity*, 468 Fed.Appx at 5.

## III.    ANALYSIS

FBR contends that the arbitration panel manifestly disregarded the law by (1) concluding that a contractual agreement existed between FBR and Hans to pay Hans a 14.5% sales commission on the stock fee it received from XL Health and (2) not finding that Hans claim to commission on the stock fee was barred by the statute of limitations for oral contracts in Virginia. Pet.'s Brief 1. FBR's claims are considered against the high presumption of validity that courts are obliged to afford arbitration panels under the FAA and the *Hall Street* and *Stolt-Nielsen* cases. FBR's hurdle is high, indeed, and we find that it fails to overcome it.

### A.    Existence of a Contract & FBR's Breach

The record of the arbitration proceedings clearly shows that the panel reached its decision only after it heard extensive testimony from both sides as to the facts and controlling law.[3] The arbitrators—as well as opposing counsel—had the opportunity to question witnesses (including Hans) and reached the legally supportable conclusion that a binding contractual agreement

---

[3] It is undisputed that Virginia law controls this contract dispute.

promising the 14.5% commission was in effect, that Hans and his partner fulfilled the conditions of the offer, and that FBR retroactively altered the agreement's terms, thus breaching a valid contract.

Virginia law clearly permits a contractual arrangement that is unilateral in origin, offered by the employer and made legally enforceable upon an employee's performance. *Nicely v. Bank of Virginia Trust Co.*, 277 S.E.2d 209, 212 (1981). Like with other contracts, an offeror may not modify the terms of the agreement after the other party's rights vest upon performance. *Progress Printing Co., Inc. v. Nichols*, 421 S.E.2d 428, 430 (1992). In other words, FBR could not change the deal after Hans had fulfilled his side of the bargain. Here, the arbitration panel considered extensive evidence and testimony before concluding that a 14.5% commission policy was in place at the time of the disputed transaction. Further, it heard thorough testimony and argument as to whether FBR breached that agreement before finding in the affirmative. This finding does not amount to manifest disregard on the part of the arbitration panel.

### B.    FBR's Statute of Limitations Defense

FBR emphasizes its Statute of Limitations defense, insisting that even if its promise to pay Hans a 14.5% commission on the stock fee constituted a contract, any claim on that contract is barred by the three-year statute of limitations requirement applicable to oral contracts under Virginia law. Va. Code § 8.01-246(4). Hans contends that the agreement was a written contract, but no evidence was provided to establish this claim. Moreover, the arbitration panel did not indicate its findings on this question (whether the contract was written or oral), so this Court proceeds under the assumption that the contract was oral, and the three-year provision applies.

In Virginia, the statute of limitations claim is an affirmative defense for which the defendant bears the burden of proof. *Lo v. Burke*, 455 S.E.2d 9, 12 (Va. 1995). Here, the crucial

issue hinges on the date the cause of action accrued. Virginia defines "accrued" as the moment when the breach occurs. Va. Code § 8.01-230. FBR contends that any breach accrued in June 2008, when FBR received the stock payment from XL Health. Hans argues, instead, that the moment of breach occurred when FBR liquidated the stock in March 2011. This court need not re-find the facts. The arbitration panel has already done so, and it clearly found for Hans, awarding him his share of the 14.5% commission on the stock fee. The arbitration panel considered evidence as to the controlling law and the disputed facts, and it reached a conclusion. Even if this court disagreed with the arbitration panel's decision, it could not overrule a conclusion so clearly within the acceptable confines of the law. *Stolt-Nielsen*, 559 U.S. at 671.

In this circuit, courts reviewing arbitral decisions must "confirm [an arbitration award] if a justifiable ground for the decision can be inferred from the facts of the case." *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354-55 (D.C. Cir. 2006). Justifiable grounds here abound. The arbitration panel's decision was justifiable and reasonable under the law and this case's particular facts. Moreover, its decision and award treads nowhere close to the manifest disregard it must have exhibited in order for this Court to vacate its judgment. FBR fails to meet its burden here, and it should not continue to use the courts to re-litigate disputes it has settled—albeit not in its favor—through arbitration.

## IV.    CONCLUSION

The Court will DENY Petitioner's Petition and grant Respondent's Motion. An Order shall issue with this opinion.

Signed by Royce C. Lamberth, U.S. District Judge, on October 18, 2013.